UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PNC BANK, NATIONAL ASSOCIATION,

        Plaintiff,

  v.                                      Case No. 19-cv-720-pp

ACTION SALES GROUP, LLC,
and DANIEL J. BUNCHKOWSKI,

        Defendants.

**ORDER DENYING DEFENDANT BUNCHKOWSKI'S MOTION TO VACATE DEFAULT/MOTION FOR LEAVE TO FILE ANSWER TO COMPLAINT AND BRIEF IN OPPOSITION TO MOTION FOR DEFAULT JUDGMENT (DKT. NO. 10), GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 8) AND STAYING ENTRY OF JUDGMENT**

On May 14, 2019, the plaintiff sued Action Sales Group LLC ("Action") and Daniel J. Bunchkowski. Dkt. No 1. The plaintiff served Bunchkowski on May 16, 2019, dkt. no. 4, and Action on May 20, 2019, dkt. no. 3. Neither defendant responded within twenty-one days as required by the Federal Rules of Civil Procedure, and the plaintiff sought default. Dkt. No. 7. The clerk entered default on August 1, 2019, and the plaintiff filed a motion for default judgment the same day. Dkt. No. 8. On September 3, 2019, Bunchkowski filed a motion to vacate default, citing excusable neglect. Dkt. No. 10. He simultaneously filed a motion for leave to file an answer to the complaint and a brief in opposition to the motion for default. Id. The plaintiff opposed both

1

motions, arguing that Bunchkowski failed to timely respond to the motion for default and has not shown good cause to vacate it. Dkt. No. 14.

## I. JURISDICTION

The plaintiff is a banking association registered in Delaware with its principle place of business in Pittsburgh, Pennsylvania. Dkt No. 1 at ¶1. Action is a domestic limited liability company with a principal place of business in Elm Grove, Wisconsin. Id. at ¶2. The plaintiff alleges that Action has two members: Bunchkowski and Joel M. Peso, both whom are citizens of Wisconsin. Id. The plaintiff asserts that the disputed contractual amount is $157,957.59, which satisfies the amount-in-controversy requirement for diversity jurisdiction. Id. at ¶4. The court has jurisdiction under 28 U.S.C. §1332.

## II. ALLEGATIONS IN THE COMPLAINT

The plaintiff alleges that on April 22, 2016, Action executed and delivered a promissory note to the plaintiff "in the original principal amount of $150,000." Id. at ¶7. While the plaintiff doesn't state it explicitly, the implication is that it loaned Action $150,000 as consideration for the promissory note. The plaintiff alleges that Action failed to make payments under the terms of the note (despite the plaintiff's demand) and that it owes the plaintiff $77,515.98. Id. at ¶¶8, 11. The plaintiff also alleges that Action took out a $100,000 line of credit with the plaintiff, failed to make payments on that credit line and owes the plaintiff $84,736.58 as a result of that default. Id. at ¶¶15-21. The plaintiff asserts that Action executed a security agreement

pledging certain assets as collateral for the loan and the line of credit, that under the agreement Action should have turned those assets over to the plaintiff upon default and that it hasn't done so (despite the assets being located, as far as the plaintiff knows, on Action's property). Id. at ¶¶26-36.

The plaintiff asserts that Bunchkowski executed a guaranty agreement under which he unconditionally guaranteed payment of Action's obligations, including attorney's fees, costs and expenses. Id. at ¶38. It says that Bunchkowski failed to pay the amounts due under the guaranty agreement after Action failed to make its payments, despite the plaintiff's demand for payment. Id. at ¶40. The plaintiff says Bunchkowski owes it $162.255.56 (the sum of the amounts owed on the loan and the line of credit) plus fees, interest and default interest. Id. at ¶41.

The plaintiff asks the court to grant a money judgment against Action for the amounts it owes on the loan and the line of credit, including costs, fees and attorney's fees. Id. at 7-8. It also seeks a judgment of replevin against Action, requiring it to turn over the collateral. Id. at 8. It asks the court to issue a money judgment against Bunchkowski for the amounts owed under the guaranty agreement, including interest, costs, fees and attorney's fees. Id. Finally, it asks the court for a money judgment against Action for the value of any of the collateral it doesn't turn over. Id.

### III. ENTRY OF DEFAULT

Federal Rule of Civil Procedure 55 requires a two-step process before the entry of default judgment. A party first must seek an entry of default based on

3

the opposing party's failure to plead. Fed. R. Civ. P. 55(a). This means that the court must assure itself that the defendant was aware of the suit and still did not respond.

The plaintiff filed the executed summons as to both defendants. The process agent served Bunchkowski on May 16, 2019 and Action on May 20, 2019. Dkt. Nos. 3, 4. Bunchkowski's answer was due around June 6, Action's around June 10; neither filed timely answers. The plaintiff has filed the affidavit of non-military service for Bunchkowski, dkt. no. 6; it isn't required to file such an affidavit for a corporate defendant like Action. It also filed an affidavit of default, dkt. no. 7, and the clerk entered default on August 1, 2019.

### IV. DEFENDANT BUNCHKOWSKI'S MOTION TO VACATE DEFAULT AND FOR LEAVE TO FILE ANSWER TO COMPLAINT AND OPPOSITION TO MOTION FOR DEFAULT JUDGMENT (DKT. NO. 10)

A. <u>Bunchkowski's Motion</u>

The plaintiff filed its motion for default judgment on the same day the clerk entered default. Dkt. No. 8. Thirty-three days later, Bunchkowski filed a motion to vacate the default. Dkt. No. 10. He acknowledges that he was served on May 16, 2019. <u>Id.</u> at ¶2. Citing Fed. Rule Civ. P. 6(b)(1)(B) and 55(c), however, Bunchkowski says his failure to answer arose from his mistaken belief that because he engaged a debt negotiation service before the plaintiff filed the case, there had been a "suspension of the deadline to respond while negotiations [were] ongoing." <u>Id.</u> at ¶6(a). Bunchkowski's affidavit explains that this is the first time he has been sued in federal court; his only prior litigation experience is being named as a third-party defendant in a state case. Dkt. No.

4

11 at ¶3. He says he knew that the plaintiff would be trying to collect the money it claims it is owed, so he hired Second Wind Consultants to try to negotiate a resolution to the dispute. Id. at ¶4. He says that he hired Second Wind before the plaintiff filed this federal suit, and that he "was informed and believed that [Second Wind] was in communication with the plaintiff or its representatives prior to the commencement of this action." Id. at ¶5. The plaintiff says that when he was served with the federal complaint, he thought that because he'd engaged Second Wind, "there was no need for [him] to respond to the lawsuit." Id. at ¶6. Bunchkowski says that he thought that the settlement negotiations "held the matter in abeyance until such time as either a settlement was reached or negotiations broke down, at which time [he] would be required to file an answer." Id. The plaintiff says that he since has "been informed" that his belief wasn't true; he asserts that if he'd known he was required to respond to the complaint by the deadline in the summons, he would have done so. Id. at ¶7. The motion argues that Bunchkowski's failure to timely answer wasn't due to bad faith or an intent to delay, that there has been no meaningful activity in the case, that the plaintiff hasn't incurred substantial costs as a result of the delay and that allowing Bunchkowski to respond won't prejudice the defendant. Dkt. No. 10 at ¶6(c).

 B. <u>The Rule 55(c) Factors</u>

Federal Rule of Civil Procedure 55(c) provides that the court "may set aside an entry of default for good cause. A defendant bears the burden of establishing: "(1) good cause for the default; (2) quick action to correct it; and

5

(3) a meritorious defense to the complaint." Wehrs v. Wells, 688 F.3d 886, 890 (7th Cir. 2012). The Seventh Circuit has explained that the test should be applied "liberally" in the Rule 55(c) context, because of the "policy of favoring trial on the merits over default judgment." Cracco v. Vitran Exp. Inc., 559 F.3d 625, 630-31 (7th Cir. 2009) (citing United States v. DiMucci, 879 F.2d 1488, 1495 (7th Cir. 1989)).

        1.     *Good Cause for the Default*

Bunchkowski cites his lack of experience in federal court and his mistaken belief that the Second Wind negotiations suspended the deadline for him to answer as the reason for his failure to timely answer. The plaintiff responds that Bunchkowski knew he had to respond to the complaint because the plaintiff sent Bunchkowski an April 23, 2019 demand letter telling him that the plaintiff would act unless Bunchkowski paid in full. Dkt. No. 14 at 3-4. The letter, which the plaintiff attached to its response, demands payment in full by May 2, 2019. Dkt. No. 14-2 at 1. The letter includes the following language:

> This letter is not intended to be a waiver of any rights, remedies or recourse available to the Bank, nor an election of remedies arising as a result of the default or of any other default which may now or hereafter exist with respect to the Notes. The collection of interest or acceptance of partial payments (that is, less than the total amounts due in accordance with the terms of the Notes) by the Bank shall not constitute a waiver of the Bank's acceleration of the Loans or of any other rights of the Bank under the Notes or the other loan documentation.

Id. at 2. The plaintiff also notes that Bunchkowski previously had been named in state court litigation and had hired an attorney to file an answer in that case. Dkt. No. 14 at ¶9.

6

The Rule 55(c) standard is a lenient one, and the Seventh Circuit has held that "good cause" under that standard "does not necessarily require a good excuse for the defendant's lapse." JMB Mfg., Inc. v. Child Craft, LLC, 799 F.3d 780, 792 (7th Cir. 2015) (quoting Sims v. EGA Products, Inc., 475 F.3d 865, 868 (7th Cir. 2007)). Courts have found good cause when a default results from inadvertence or an honest misunderstanding. Adams v. Tegels, 2019 WL 5188971, *4 (W.D. Oct. 15, 2019); see also Champ v. Forum, 2019 WL 4826849 *1 (S.D. Ill. Oct. 1, 2019). In McGraw v. Corizon Health, Inc., the district court found good cause where the defendant mistakenly assumed that her former employer would handle the matter on her behalf and believed she was not required to take further action. 2019 WL 7584323, *1 (S.D. Ind. April 29, 2019). The Seventh Circuit has found good cause where a defendant failed to make sure its registered agent would forward the service of process to the appropriate employee. Cracco, 559 F.3d at 631. It also found good cause there the party's liability insurer misidentified a complaint as "to be monitored" rather than "in litigation." Parker v. Scheck Mechanical Corp., 772 F.3d 502, 504-505 (7th Cir. 2014).

Bunchkowski knew of the dispute with the plaintiff and hired a firm to negotiate a resolution. He says that he believed that the proceedings were stayed while they were negotiating. Although he does not explain the basis for that belief, the court has no reason to doubt the veracity of his statement. The plaintiff argues that Bunchkowski knew what was required because he had been named in a state court case and had hired an attorney to file an answer

7

in that case. But Bunchkowski explains that he was not engaged in discussions or negotiations at the time he was served in the state case. Dkt. No. 16 at 2. He was served as a third-party defendant; he contacted his insurance provider and the insurance company hired an attorney to file an answer. Id.; Dkt. No. 11 at ¶3. The plaintiff also cites its demand letter as evidence that Bunchkowski knew he was required to file an answer, but the letter doesn't clearly state that. It says only that if Bunchkowski didn't pay by the deadline, the plaintiff would act and that the plaintiff wasn't waiving its rights. It doesn't define "action," and says nothing about how any such "action" would impact the on-going negotiations. Given these facts, the court finds that Bunchkowski has shown good cause for the default.

        2.     *Quick Action to Correct Default*

Bunchkowski has not demonstrated, however, that he took quick action to correct the default. The plaintiff served Bunchowski individually on May 20, 2019. Dkt. No. 4. Even if Bunckowski believed as of that date that he didn't need to answer due to the on-going negotiations, the plaintiff mailed him the request for entry of default and the default on August 1, 2019. Dkt. No. 8-4. The plaintiff sent the request to Bunchkowski at his business address and home address. Id. Bunchkowski didn't file anything until September 3, 2019—over a month later. Even "snail mail" would not have taken that long to get from the plaintiff in Pittsburgh to Bunchkowksi in West Allis, Wisconsin; he likely would have received notice of the default by August 7 or so. He provides

8

no explanation for why he didn't ask the court to vacate the default until September 3.

Bunchkowski doesn't say what event prompted him to seek to vacate the default. Was it a breakdown in the Second Wind negotiations? If so, when did that occur? Was it his receipt of the notice of default? When did he receive it? Was the delay attributable to finding an attorney? Or was it attributable to his attempts to talk to the plaintiff on his own? Or did he simply sit on his rights for several weeks? Bunchkowski has provided no explanation for delaying over a month from the date the plaintiff mailed him the notice of default, other than saying that he believed that the ongoing negotiations did not require a response until negotiations broke down. This factor weighs against vacating the default.

        3.      *Meritorious Defense to the Complaint*

The Seventh Circuit has explained that the requirement that a defendant present "an arguably meritorious defense to the lawsuit" means "more than bare legal conclusions," but "less than a definitive showing that the defense will prevail." <u>Parker</u>, 772 F.3d at 505 (citations omitted). "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." <u>Jones v. Phipps</u>, 39 F.3d 158, 165 (7th Cir. 1994) (citing <u>Merrill Lynch Mortgage Co. v. Narayan</u>, 908 F.2d 246, 252 (7th Cir. 1990)).

The plaintiff sued Action on the loan default, the default on the line of credit and the replevin action, and Action has not sought relief from that

9

default. The only claim the plaintiff brought against Bunchkowski is the claim alleged in the fourth cause of action—that Bunchkowski has violated the terms of the personal guaranty he signed—and Bunchkowski is the only person named in that cause of action.

With his motion to vacate default, Bunchkokwski filed a proposed answer to the complaint. Dkt. No. 10 at 4-8. The proposed answer reads as if the sole defendant in the lawsuit is Bunchkowski; it is captioned "Daniel J. Bunchkowski's Answer and Affirmative Defenses to Complaint." Id. at 4. He admits the paragraph of the complaint that asserts that Action is an LLC with two members—himself and Joel Perso. Id. at 4, ¶2. He admits that Action borrowed $150,000 from the plaintiff and signed the promissory note, and he admits that Action didn't pay the amounts owing under the note as they became due. Id. at 5, ¶¶7, 8. He denies the allegations as to the amount due the plaintiff, however, stating that he "lacks information sufficient to form a belief as to the truth or falsity of the allegations." Id. at 5, ¶11.

The same is true for the allegations regarding the line of credit—Bunchkowski admits that Action obtained the line of credit and that it failed to pay the amounts owed on that line as they became due. Id. at 6, ¶¶17, 18. He again denies the allegations as to the amount due, claiming that he doesn't have sufficient information to form a belief as to whether they are true or false. Id. at 7, ¶21.

Bunchkowski also admits that Action pledged assets as collateral for these extensions of credit. Id. at 8, ¶26. But he denies that the plaintiff has

demanded possession of the collateral, id. at 8, ¶30, or that Action has caused the wrongful detention of the collateral, id. at 8, ¶31. He says that he lacks sufficient information to form a belief regarding whether the collateral is located at Action's principal place of business. Id. at 8, ¶34.

Finally, regarding the allegations in the fourth cause of action—the allegations against *him*—Bunchkowski admits that he executed the guaranty agreement, attached to the complaint as Exhibit G. Id. at 9, ¶38. Bunchkowski says, however, that the allegation that *Action* defaulted on the note and the line of credit is a legal conclusion to which no response is required. Id. at 9, ¶39. He denies that "[d]espite demand by [the plaintiff], [Bunchkowski] has failed and continues to fail to pay the amounts due under the Guaranty Agreement." Id. at 9, ¶40. He denies the plaintiff's allegation that *his* failure to pay the amounts due under the guaranty agreement constitutes a breach of the guaranty agreement, and that it damaged (and continues to damage) the plaintiff in the amount the plaintiff alleges. Id. at 10, ¶41.

In his reply brief in support of the motion to vacate default, Bunchkowski asserts that he has put forward a meritorious defense, because "[w]hile he acknowledges that he entered into certain loan arrangements with the Plaintiff, he disputes the amounts claimed." Dkt. No. 16 at ¶3. He asserts that he should be allowed to conduct discovery "in order to ensure that the Plaintiff's calculation of the amounts."[1] Id.

---

[1] Bunchkowski may have meant to say "in order to ensure the Plaintiff's calculations," or he may have meant to say, "in order to ensure that the Plaintiff's calculations are correct."

11

The Seventh Circuit has held that a general denial of allegations does not support a finding of a meritorious defense. Wehrs, 688 F.3d at 891. Here, Bunchkowski doesn't even deny most of the plaintiff's allegations as to liability—he *admits* them. He admits in the proposed answer that Action—of whom he is one of two members—took out the loan but didn't make payments as they were due, and that Action took out the line of credit but didn't make payments as they were due. He quibbles with the word "default," arguing whether those failures to pay constituted "default," but he does not deny that Action failed to make payments on both credit devices as the payments came due. He admits that he signed an unconditional personal guaranty, id. at 9, ¶38, and the guaranty says that the guarantor—Bunchkowski— unconditionally guarantees all obligations of Action, dkt. no. 1-1 at 39. As to the plaintiff's allegation that he failed to pay the amounts due under the guaranty, Bunchkowkski simply denies the allegation—he does not say what his defense is to that allegation, so it is impossible for the court to determine whether his defense, if he has one, is "meritorious."

In his reply brief, Bunchkowski admits that he entered into "certain loan arrangements" with the plaintiff but implies that what he disputes is the plaintiff's damages calculations. A dispute as to damages doesn't constitute a meritorious defense to the claims; indeed, even when a defendant defaults, the court does *not* deem admitted allegations relating to the amount of damages. Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983). See also, Fed. R. Civ. P. 8(b)(6); Trustees of NECA-IBEW

Pension Benefit Trust Fund v. Marion Fire Sprinkler and Alarm, Inc., No. 19-cv-147-SMY, 2020 WL 230803, at *2 (S.D. Ill. Jan. 15, 2020).

### 4. *Conclusion*

Although Bunchkowski has shown good cause for his failure to timely answer, he has not demonstrated that he took quick action to address the default or that he has a meritorious defense to the claims. The court will deny the motion to vacate default and will rule on the motion for default judgment.

## V. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT (DKT. NO. 8)

After the entry of default, the plaintiff may move for default judgment under Rule 55(b). Fed. R. Civ. P. 55(b). When the court determines that a defendant is in default, the court accepts as true the well-pleaded allegations in the complaint. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action in the complaint." Id. However, as the court noted above, "even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true." Id. (quoting In re Catt, 38 F.3d 789, 793 (7th Cir. 2004)). A district court "must conduct an inquiry in order to ascertain the amount of damages with reasonable certainty. Id. Rule 55(b)(2) allows the district court to conduct this inquiry through hearings or referrals, if necessary, to determine the amount of damages. Fed. R. Civ. P. 55(b). On the other hand, the court doesn't need to conduct a hearing or referrals if the "amount claimed is liquidated or capable of ascertainment from definite figures

13

contained in the documentary evidence or in detailed affidavits." e360 Insight, 500 F.3d at 602 (quoting Dundee Cement, 722 F.2d at 1323).

To establish liability for the defendants' breach of the promissory note, the line of credit agreement and the guaranty agreement, as well as the request for the writ of replevin on the pledged assets, the plaintiff filed the affidavit of Melissa Johnson, a vice president at the plaintiff's Philadelphia office. Dkt. No. 8-1. Johnson is the person who directly oversees the plaintiff's relationship with Action and Bunchkowski. Id. at ¶3. She also serves as the custodian of records with respect to these transactions. Id. The affidavit, along with the attached proof such as the borrowing histories on the credit devices, establishes that the defendants did not meet their contractual obligations. Deeming true the allegations in the complaint, supported by the Johnson affidavit and attachments, the court finds that the plaintiff has demonstrated that the defendants are liable on the four cases of action.

The court cannot enter a judgment of default without a hearing on damages, however, unless the amount claimed is liquidated or can be determined from definite figures in documentary evidence or detailed affidavits. Dundee Cement, 722 F.2d at 1323. The plaintiff seeks damages in the amounts unpaid under the note, line of credit and the guaranty, including costs and fees. These damages are liquidated or ascertainable from documentary evidence and affidavits. The Johnson affidavit establishes the amount due and owing on the note and the line of credit.

In his reply brief, Bunchkowski says he should be permitted to conduct discovery in order to "ensure that the plaintiff's calculation of the amount of the amounts" is correct. Dkt. No. 16 at 3. The court is not sure what Bunchkowski needs to "discover" in this regard. The plaintiff has provided proof of how it calculated the amounts due. Action should have records of the payments it did make; Bunchkowski is a member of Action and should have access to those records, to compare them to the plaintiff's records. It doesn't appear that Bunchkowski has made *any* payments on the guaranty, so he should not have to do much in the way of comparing his own payment records with the plaintiff's records. The plaintiff has listed every piece of property pledged as collateral. It is not clear why Bunchkowski—again, a member of Action—would not be able to determine whether those items (computers, printers/copiers, a TV, some furniture) are at Action's business office, and why he can't arrange to turn them over.

The court will not allow "discovery." It will give the defendants a couple of weeks to determine whether they have any evidence to support a good-faith disagreement with the plaintiff's damages calculation. If the defendants provide the court with evidence showing alleged miscalculations or discrepancies by the date the court sets below, the court will schedule a damages hearing. Otherwise, the court will enter the defendant judgment.

## VI. CONCLUSION

The court **ORDERS** that defendant Daniel J. Bunchowski's motion to vacate default, for leave to file answer to complaint and opposition to motion for default judgment is **DENIED**. Dkt. No. 10.

The court **ORDERS** that the plaintiff's motion for default judgment is **GRANTED**. Dkt. No. 8.

The court **DEFERS** entry of default judgment to allow the defendants to present proof that they have a good-faith basis for disputing the plaintiff's damages calculations.

The court **ORDERS** that by the end of the day on **March 23, 2020**, the defendants must file on the docket proof of any good-faith basis for disputing the plaintiff's damages calculation. The court **ORDERS** that if the defendants do not provide such proof by the end of the day on March 23, 2020, the court will enter default judgment as requested by the plaintiff.

Dated in Milwaukee, Wisconsin this 9th day of March, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**